```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
    PLAINTIFF,                 )    CASE NO. 2:16-CR-245
                               )
         vs.                   )
                               )
DASHAWN HOWARD,                )
                               )
    DEFENDANT.                 )
_____)

             TRANSCRIPT OF SENTENCING PROCEEDINGS
          BEFORE THE HONORABLE ALGENON L. MARBLEY
               UNITED STATES DISTRICT JUDGE
                SEPTEMBER 15, 2017; 9:30 A.M.
                      COLUMBUS, OHIO


  APPEARANCES:

  FOR THE PLAINTIFF:
       BENJAMIN C. GLASSMAN
       United States Attorney
       By:  DAVID M. DEVILLERS
       Assistant United States Attorney
       303 Marconi Boulevard
       Columbus, Ohio  43215

  FOR THE DEFENDANT:
       Office of the Federal Public Defender
       By:  RASHEEDA KHAN, ESQ.
       10 West Broad Street
       Columbus, Ohio  43215




                            - - -

       Proceedings recorded by mechanical stenography,
  transcript produced by computer.
```

SHAWNA J. EVANS, OFFICIAL FEDERAL COURT REPORTER
85 MARCONI BOULEVARD, COLUMBUS, OHIO  43215
614-719-3316

1          FRIDAY MORNING SESSION

2          SEPTEMBER 15, 2017

3                - - -

4          THE DEPUTY CLERK: 16-CR-245, United States of America

5   versus Dashawn Howard. Would the defendant please come

6   forward.

7          THE COURT: Could I see counsel at sidebar for a

8   moment?

9      (Thereupon, Court and Counsel conferred out of the hearing

10  of open court and off the record.)

11         THE COURT: Would counsel please identify themselves

12  for the record beginning with counsel for the government.

13         MR. DEVILLERS: Dave DeVillers on behalf of the United

14  States.

15         MS. KHAN: Rasheeda Khan on behalf of Deshawn Howard.

16         THE COURT: What is at issue in this proceeding, Mr.

17  DeVillers?

18         MR. DEVILLERS: On May 5th, the defendant pled guilty

19  to two counts of felon in possession of a firearm in violation

20  of 18 U.S.C. 922(g). He is before the Court for sentencing.

21         THE COURT: Ms. Khan, was a Presentence Investigation

22  Report, including any and all revisions or addenda, provided to

23  Mr. Howard at least ten days before this hearing?

24         MS. KHAN: Yes, Your Honor.

25         THE COURT: Mr. Howard, did you receive a copy of the

1  Presentence Investigation Report, including any and all
2  revisions or addenda, at least ten days before your court
3  appearance today?
4              THE DEFENDANT:  Yes, Your Honor.
5              THE COURT:  And did you review those materials?
6              THE DEFENDANT:  Yes, Your Honor.
7              THE COURT:  Did you review them with your attorney,
8  Ms. Khan?
9              THE DEFENDANT:  Yes, Your Honor.
10             THE COURT:  Did Ms. Khan answer any and all questions
11 that you had?
12             THE DEFENDANT:  Yes, Your Honor.
13             THE COURT:  Ms. Khan, are any of the factual
14 statements contained in the PSR disputed by the defense?
15             MS. KHAN:  Yes, Your Honor.  Those disputes are
16 outlined in our sentencing memorandum and in the objections to
17 the PSI that's attached to the PSI.
18             THE COURT:  Yes.
19             MS. KHAN:  I would note that a substantial part of
20 these objections that we have relate to the probation officer's
21 calculation of the guidelines.  If the Court has indicated its
22 position on whether it's going to accept the plea agreement,
23 then that would resolve --
24             THE COURT:  I understand that.  It's almost -- the
25 objection is almost a hybrid because it's almost an objection

4

1 to the factual statements, but it's also an objection to the
2 probation officer's calculation.
3     This is an 11(c)(1)(C) plea agreement and the Court has
4 accepted the plea agreement. Hence, I'm going to abide by the
5 terms of the 11(c)(1)(C). And at least as far as the objection
6 is concerned, the Court's position, unless either of you just
7 want to be heard for the record, is that I'm going to sustain
8 your objection, Ms. Khan, pursuant to the plea agreement. I
9 think that the probation officer was correct in her analysis,
10 but her analysis is trumped by the plea agreement and the Court
11 has already accepted it. So that objection is sustained.
12     MS. KHAN: Thank you, Your Honor. And I would just
13 add that for the record that the portions of the PSI included
14 in the offense conduct, that the balance of our objections
15 would be satisfied if the Court simply notes that Mr. Howard
16 denies those allegations.
17     THE COURT: The Court --
18     MS. KHAN: Unrelated to the counts that he's pleading
19 to.
20     THE COURT: The Court notes that he denies the --
21 Mr. Howard denies the allegations.
22     MS. KHAN: Thank you, Your Honor.
23     THE COURT: Unrelated to the counts to which he's
24 being sentenced.
25     MS. KHAN: Thank you.

1      THE COURT:  That being the case, the Court otherwise
2 adopts the statement of facts as set forth in the PSR as its
3 statement of facts, and I also adopt the guideline calculations
4 agreed to in the 11(c)(1)(C) which would put Mr. Howard in the
5 range of 27 to 41 months of imprisonment.
6      Is there any objection from the defense?
7      MS. KHAN:  No, Your Honor.
8      THE COURT:  From the government?
9      MR. DEVILLERS:  None, Your Honor.
10      THE COURT:  Ms. Khan, what is your position with
11 respect to the range -- with respect to the sentence that you
12 would urge this Court to impose in this case?
13      MS. KHAN:  Your Honor, we're standing on the
14 statements provided in the sentencing memorandum which is
15 asking for a sentence of 27 months.  He's been incarcerated for
16 a significant period of time.  This is a young, highly
17 intelligent young man who has good family support.  His mother
18 is here in the courtroom.  He maintains daily contact with his
19 family.  He also has a young child, as explained in the
20 sentencing memorandum.
21      We understand that he must be punished.  However, this
22 is a person that has still some potential.  He would certainly
23 benefit from vocational opportunities while in prison.
24 However, it's our position that a sentence of 27 months and no
25 longer would accomplish the goals set forth in 3553(a).

6

1       That's all, Your Honor.
2               THE COURT: Mr. DeVillers?
3               MR. DEVILLERS: Your Honor, as stated in our
4    sentencing memorandum, we would ask for 41 months. I base that
5    primarily on the fact, of course, that there are two weapons.
6    The first event took place in August of 2015 and he was
7    arrested. He made bond, got out, and less than a month later
8    he gets caught doing the same thing with another loaded firearm
9    and 14 rounds and a round in the chamber. As such, we would
10   ask for the high end of the agreed upon sentencing range of 41
11   months.
12              THE COURT: Does he deny the August and September
13   incidents?
14              MS. KHAN: He does not, Your Honor. Those are --
15              THE COURT: You're talking about the
16   August 21st incident and the September 10th incident; is that
17   right?
18              MR. DEVILLERS: I'm talking about the September 15th
19   incident, which that is Count 2.
20              THE COURT: Okay.
21              MR. DEVILLERS: Paragraph 17, Your Honor.
22              THE COURT: Yes. Okay. And the first one was the
23   August 21st?
24              MR. DEVILLERS: Correct, Your Honor.
25              THE COURT: Paragraph 11?

7

1         MR. DEVILLERS: Yes, Your Honor.

2         THE COURT: Et seq.

3     Mr. Howard, do you have remarks you wish to make on your
4 own behalf?

5         THE DEFENDANT: Dear Honorable Judge, good afternoon,
6 everyone. As you all know, my name is Dashawn Howard, Sr. As
7 I stand here today, I would like to apologize for having to be
8 here for my wrongdoings in life. Being incarcerated, I've
9 learned a valuable lesson that guns are not the only way to
10 protect yourself. God is the best protection that you can
11 have. And I also realize carrying such a deadly weapon
12 prevented me from being the best father to my son and missing
13 time that I can never get back. I can assure you that when I
14 get back to society, I'm going to make a positive difference
15 not only for myself but for others around me also.

16     And again, my name is Deshawn Howard, Sr., and I accept
17 full responsibility for my actions. And thank you for your
18 time. It was very appreciative. Thank you.

19         THE COURT: Mr. Howard, I'm not going to inquire about
20 anything other than the August 21st -- well, there was the
21 July 19th incident, the August 21st matter, and the
22 September 15th matter. Now, all of these involve guns,
23 Mr. Howard, all of them.

24     Can you sort of explain to the Court -- and I know that
25 that's in your past. That's what you just told me. But I want

1   to understand because I'm getting so many of these cases.  I've
2   had so many of them that I decided to ask the defendants
3   themselves why the necessity of gun possession in the first
4   place.  And you see what they do.  They discharge.  They shoot
5   at people.  They shoot people.  In the July 19th incident, a
6   young lady was shot in the leg, if I understand correctly.
7           Is that right, Mr. DeVillers?
8           MR. DEVILLERS:  Yes, Your Honor.
9           THE COURT:  So explain that to me because I don't
10  understand it.  I'm being asked to impose a sentence between 27
11  and 41 months, and maybe you can enlighten me as to why I
12  should be closer to 27 than to 41.
13          THE DEFENDANT:  So you asking me to explain the
14  July 19th shooting?  Or why I carried a weapon?  To not make no
15  excuse: for protection.  I've been shot at on three different
16  occasions.  I just carry it for protection.
17          THE COURT:  Let me ask you this.  You've been shot
18  three times, right?
19          THE DEFENDANT:  Correct.
20          THE COURT:  Do you ever sit down and wonder how long
21  you're going to live living that kind of life, getting shot at
22  or getting shot?  Tell me the truth.
23          THE DEFENDANT:  I have thought about it.
24          THE COURT:  When you close your eyes and imagine your
25  life, how old do you think you'll be when you expire?

1       THE DEFENDANT:  I would like to grow old.
2       THE COURT:  We all would.  But tell me what you think.
3       THE DEFENDANT:  I think I'm going to see at least 80.
4       THE COURT:  Okay.  Do you think that you can sustain
5  any more gunshots, Mr. Howard?
6       THE DEFENDANT:  No, sir.
7       THE COURT:  So I understand what you're saying because
8  you aren't the first defendant to tell me that "I carry a gun
9  for protection."  So what's the option you believe, Mr. Howard,
10 to carrying a gun for protection?  Because I know that your
11 lawyer tells me you're a smart, young man.  This is not a trick
12 question.  What's the option?
13      THE DEFENDANT:  To what would happen?
14      THE COURT:  Yes.  Instead of carrying a gun for
15 protection, what options do you have?  What else can you do?
16 What other choices can you make?
17      THE DEFENDANT:  I can focus on just raising my son and
18 staying out the way, staying out the neighborhood --
19      THE COURT:  That's right.  You can go to places where
20 you don't need to carry a gun to be there, right?
21      THE DEFENDANT:  Correct.
22      THE COURT:  If you decide to take your son to the zoo,
23 chances are there is not a shootout going to happen there at
24 the Columbus Zoo, right?
25      THE DEFENDANT:  Correct.

1          THE COURT:  You hear about some of these clubs where
2   there are shootouts on the regular, right?
3          THE DEFENDANT:  Correct.
4          THE COURT:  And you know there's gang activity in
5   Columbus, right?
6          THE DEFENDANT:  Correct.
7          THE COURT:  Were you formally affiliated with the
8   Bloods?
9          THE DEFENDANT:  Never.
10         THE COURT:  With the Crips?
11         THE DEFENDANT:  Never.
12         THE COURT:  Is there any evidence to the contrary,
13  Mr. DeVillers?
14         MR. DEVILLERS:  I'm aware of some, Your Honor, yes.
15         THE COURT:  Which gang are you aware of that you
16  believe that Mr. Howard might have been affiliated with?
17         MR. DEVILLERS:  I believe he associated with a Crips
18  set, Your Honor, in the Atcheson area.
19         THE COURT:  I thought I read that someplace.
20      Whether you were or whether you weren't is not an issue
21  for this hearing, okay?  But let me tell you something.  Your
22  life span as a gang member is limited because they resolve
23  their disputes anymore by shooting.  Now, maybe the other
24  three -- the three times you were shot had nothing to do with
25  gang activity.  You could have been an unintended victim.  I'm

```
                                                              11
1    not asking you to tell me whether you were or you were not.
2    But the fact that you are standing here before me walking
3    without a limp, not paralyzed and still alive is sheer luck.
4           Would you agree with me, Mr. Howard?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  Mr. Howard, do you have any friends who
7    were killed by gunshots?
8              THE DEFENDANT:  Yes, Your Honor.
9              THE COURT:  Do you have any friends, Mr. Howard, who
10   were ever shot by a gun?
11             THE DEFENDANT:  Yes.
12             THE COURT:  Among those friends, were any of them
13   intended targets, Mr. Howard?
14             THE DEFENDANT:  Yes, Your Honor.
15             THE COURT:  And were any of them unintended targets?
16             THE DEFENDANT:  Yes, Your Honor.
17             THE COURT:  Who are those ladies back there in the
18   courtroom, Mr. Howard?  Who are they?
19             THE DEFENDANT:  That's my mom, my aunt, and my cousin.
20             THE COURT:  You ever been with your mother to a
21   funeral?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  Did she cry?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  What do you think she would do at your
```

1    funeral, Mr. Howard?

2             THE DEFENDANT:  Cry, be very hurt.

3             THE COURT:  I have tried to tell these defendants,
4    especially those who decided that they wanted an alternative
5    lifestyle - life in the streets, get in, quote, the life - I've
6    tried to advise them that's not the path to a long and
7    productive life.  I'm going to continue to try to persuade
8    people because this gun violence, it has to stop.  You see it
9    in cities throughout the nation, in our own city.  It's not a
10   sustainable model.  It seems to be a way of life among younger
11   guys.  Then, if you're fortunate enough to live a long life,
12   you'll look back and see it's not the way to resolve disputes
13   or to proceed.

14            If it is as you represent it to be, Mr. Howard, that you
15   want to take care of your son and raise your son, that's
16   laudable.  It's not going to happen if you continue with the
17   gun play because ultimately your luck runs out and you either
18   get shot again and killed, or you shoot and kill somebody.  If
19   you shoot and kill somebody, you're going to be taken away from
20   your son.  You're going to be in prison.  That's kind of not
21   the example that you're going to want to leave for him.  You
22   won't want him to have to go to school and say, "My dad can't
23   be at the PTA meeting tonight because he's serving a life
24   sentence for shooting somebody."  Or you won't want your son
25   to say, "My grandmother's bringing me because my daddy is dead;

13

1  he got shot."
2          Those are not two viable options, are they, Mr. Howard?
3              THE DEFENDANT: No, sir.
4              THE COURT: Now, did you say to yourself after the
5  first time that you got shot that you were no longer going to
6  live this lifestyle? Did you say that to yourself at any time
7  after you got shot the first time?
8              THE DEFENDANT: Yes, Your Honor.
9              THE COURT: Of course you did. And did you say that
10 to yourself the second time after you got shot, that "I'm going
11 to get out of this life because the next time I might not be so
12 lucky"? Did you?
13             THE DEFENDANT: Yes, Your Honor.
14             THE COURT: Did you say that to yourself the third
15 time?
16             THE DEFENDANT: Yes, Your Honor.
17             THE COURT: What changed between time one and time two
18 that put you in the way of the bullet those other two times,
19 Mr. Howard?
20             THE DEFENDANT: I really didn't have time to sit back
21 and think, like I was just stuck in my ways. And now I have
22 time incarcerated to think things out and learn.
23             THE COURT: Was your baby born after the first,
24 second, or third shot?
25             THE DEFENDANT: Third.

14

1  THE COURT: And what did your mother tell you after
2  the first and second shot? What did she tell you?
3  THE DEFENDANT: Stay out these streets.
4  THE COURT: What did your aunt tell you?
5  THE DEFENDANT: Same thing.
6  THE COURT: And what did your sister say to you?
7  THE DEFENDANT: Same thing.
8  THE COURT: So you didn't listen to them after you
9  were shot the first or the second time. Are you listening to
10 them after you got shot the third time, Mr. Howard?
11 THE DEFENDANT: Absolutely.
12 THE COURT: I hope that I don't see you in my
13 courtroom again. I hope that I don't have to read about you
14 either having shot somebody because if you have a gun -- you
15 know what they say: if you have a gun, you're going to have to
16 use it. If you don't have a gun and you aren't in places --
17 every time you think about going to the club, go to the zoo
18 instead. Get your son, take him to the zoo. That way you can
19 see other animals in cages - that's a metaphor - because they
20 can't let them out in the wild. They have to keep them in the
21 wild. They can't let them out on the street because they might
22 kill somebody. Those animals, they act on instinct. A tiger
23 might kill you for food not because he has a beef with you, but
24 you go out in those streets and you got people who might have a
25 beef or you're in the wrong territory and you get shot.

1    It's nothing but a waste, Mr. Howard.  At the end of the
2  day, all these killings, it's just a waste.  It's just a waste.
3  If you've got skills that will put you in the illegal economy,
4  you've got skills that will put you in the legal economy.  And
5  then, if you have a disagreement, you can resolve it here in
6  court.
7    You can believe or disbelieve me but history bears out
8  what I'm saying.  You can just read a paper or read a magazine
9  or talk to your friends and they'll bear it out because people
10 get shot and killed daily, and it has to end.  It has to start
11 with somebody who's at least at some point been out there and
12 you've seen it.  You don't have to respond.  You've seen it.
13 And it has to end, Mr. Howard.
14    Now, because the Court has accepted the 11(c)(1)(C), I'm
15 not -- unless there is an objection either from the defense or
16 from the government, I'm not going to go through a detailed
17 3553(a) analysis.
18    Any objection?
19       MS. KHAN:  No, Your Honor.
20       MR. DEVILLERS:  No, Your Honor.
21       THE COURT:  I'm now going to state the sentence I
22 intend to impose, but Counsel will have a final opportunity to
23 make any legal objection before sentence actually is imposed.
24    Pursuant to the Sentencing Reform Act of 1984 and 18
25 United States Code Section 3553(a) and Rule 11(c)(1)(C) of the

16

1  Federal Rules of Criminal Procedure, it is the judgment of the
2  Court that the defendant, Deshawn Howard, is hereby committed
3  to the custody of the United States Bureau of Prisons to be
4  imprisoned for a term of 33 months on Counts 1 and 2 to run
5  concurrently.  Upon release from imprisonment, the defendant
6  shall serve a term of supervised release of three years on
7  Counts 1 and 2 to run concurrently.
8       While in the custody of the Bureau of Prisons, the
9  defendant shall undergo psychiatric and/or psychological
10 counseling on issues of anger management.  The defendant will
11 also receive his GED.  If he doesn't receive his GED while he's
12 in prison, then as a condition of his supervised release, he
13 must receive his GED.  While on supervised release, the
14 defendant must not commit another federal, state or local
15 crime.  He shall be prohibited from possessing a firearm,
16 ammunition, destructive device or dangerous weapon.  He must
17 not unlawfully possess a controlled substance.  He must refrain
18 from any unlawful use of a controlled substance.  He must
19 submit to one drug test within 15 days of release from
20 imprisonment, and at least two periodic drug tests thereafter
21 as determined by the Court.
22      He must cooperate in the collection of a sample of his
23 DNA as directed by the probation officer.  He must comply with
24 the standard conditions of supervised release that have been
25 adopted by this Court.

1  I find that he does not have the ability to pay a fine.
2  However, he must pay a special assessment of $200 which is due
3  immediately.  The firearm outlined in Forfeiture Count A of the
4  indictment is forfeited to the United States pursuant to the
5  plea agreement.
6  Are there any objections to the sentence as stated,
7  Ms. Khan?
8  MS. KHAN:  No, Your Honor.
9  THE COURT:  Mr. DeVillers?
10  MR. DEVILLERS:  No, Your Honor.
11  THE COURT:  The sentence as stated will be imposed.
12  Mr. Howard, you have the right to appeal this sentence.
13  If you cannot afford an appeal, you have the right to apply for
14  leave to file an appeal *in forma pauperis*, which means without
15  the payment of any cost or expense to you.  If that application
16  is granted, the Clerk of Court will prepare or file a notice of
17  appeal on your behalf.  Any such notice of appeal must be filed
18  within fourteen days of the time that I enter judgment on your
19  sentence.
20  I didn't sentence you, Mr. Howard, to the lowest end or
21  the highest end of the range; somewhere kind of in the low
22  middle.  I sentenced you to the low middle because I want you
23  to know that this is serious, but I want you to have an
24  incentive to do well so that you can do good because the
25  options for you aren't going to be great, particularly if you

18

1   don't get your GED.
2           Because the way the cycle works is that you get your
3   GED, you do your time, you get out, you have no job, you have
4   no money, and you're given options as to how to make money.
5   You believe you're a bit more sophisticated now, that you can
6   do stuff that may be criminal and avoid detection.  You're
7   promised that you can make money and you can do well and
8   everything will be okay and you'll take care of your kid.
9   You'll justify what you have to do to survive.  But the trick
10  is that you don't survive.  Because you're either going to get
11  caught again and be before me, or you're going to get shot
12  again, or you're going to shoot somebody and be before me.
13          You can't have one foot in and one foot out.  You're
14  going to have to leave that lifestyle alone.  The Court's hope
15  is that through your counseling and through your time in
16  prison, you won't learn how to be a better gangster but how to
17  leave gangsterism alone.  The choice is uniquely yours.  You
18  know a lot of old judges, prosecutors and defense lawyers, but
19  not quite as many old gangsters.
20          Are there any other matters that we need to take up,
21  Ms. Khan?
22          MS. KHAN:  No, Your Honor.
23          THE COURT:  Mr. DeVillers?
24          MR. DEVILLERS:  No, Your Honor.
25       (Proceedings concluded at 12:26 p.m.)

- - -

C E R T I F I C A T E

    I, Shawna J. Evans, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Algenon L. Marbley, Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.

    s/Shawna J. Evans_____
    Shawna J. Evans, RMR, CRR
    Official Federal Court Reporter

    November 13, 2017